# Fisher v. Fisher

C.P. of Berks County, no. 06-02202, PACSES 162109423

*Berks County Domestic Relations,* for plaintiff.

*Lauren M. Applegate* and *Roarke T. Aston,* for defendant.

SCHMEHL, P.W., *J.,* February 17, 2010—This matter came before the court for enforcement/contempt proceedings as the result of the defendant's alleged violation of his support order. Following a hearing on September 18, 2009, the court ordered the defendant to be imprisoned for three months subject to cash and work release purges. The defendant filed a notice of appeal and a petition for reconsideration. The court granted reconsideration and held a second hearing on November 20, 2009. Upon re-hearing, the court amended its order to reduce the purge amounts. The defendant again filed an appeal.

The defendant is subject to a currently charging order for support, which charges at $442 per month with $100 per month on arrears for two children. As of September 18, 2009, the arrears totaled $3,907, and as of November 20, 2009, $4,700. The defendant's last payment was on

January 30, 2009, which was made by way of wage attachment; thereafter, the defendant lost his job and failed to report the loss of employment to domestic relations.

The defendant appeared in domestic relations for a contempt conference on May 12, 2009 where he indicated that he was unemployed and had not worked since January. The conference was continued to July 21, 2009, and the defendant was ordered to perform a diligent job search and supply proof of his efforts at the July 21 conference. The defendant failed to appear for the conference, made no payments and failed to record any employment. A bench warrant was issued and the defendant was taken into custody on September 3, 2009.

The defendant did not dispute any of these facts at the hearing. His attorney stated that he had no bank accounts, had no cars, and paid no rent. She stated that the defendant lived with his father and had been looking for employment at a variety of employers. She argued that the requested purge amount be lowered from the domestic relations office's recommended amount of $1,600. In imposing a sentence on the defendant, the court honored his counsel's request to reduce the recommended purge to $1,000 and set a work release purge of $500.

At the reconsideration hearing on November 20, 2009, the domestic relations enforcement officer shared the same set of facts as at the first hearing with the additional information that defendant did receive a work release agreement from the Berks County Prison whereby the defendant would begin an employment assignment. The defendant's counsel responded by asking for either a lower purge amount than previously set or per-

haps a time served release. He argued that defendant had no present ability to pay, did not have a present ability to pay at the previous hearing, and has not been eligible for work release. Given the presence of the work release agreement in the file and the enforcement officer's recitation of the facts, the court interrupted the defendant's counsel on the work release issue, and the defendant stated that there was an issue of going through PRC which prevented him from participating in work release. Defendant's counsel resumed his argument that the defendant had no ability to pay and in fact had gotten rid of all luxuries and had only what he needed to survive while living with his father. The court was not persuaded to reduce the term of imprisonment, however, it did once again cut the purge amounts in half.

The court found the defendant to be in willful civil contempt and ordered incarceration as a result of the defendant's failure to pay support, to appear for a contempt conference in the domestic relations office when ordered, and to provide a record or other proof of his attempts to find a job as ordered. The defendant failed to meet his burden of demonstrating an inability to comply with the court's orders and never provided any excuse for missing the July 21, 2009 contempt conference. Despite being ordered in May 2009 to "diligently seek employment," the defendant was somehow unable to obtain employment over the course of the next four months, but within one month of incarceration was able to obtain the same. It is clear to the court it was simply a matter of motivation.

Additionally, having only minimal self-support obligations while living with his father, the defendant appar-

ently made no attempt, and made no allegations that he had no ability, to borrow money from any source such as, but not limited to, credit cards, friends or family. Furthermore, although reportedly living with his father, there was no indication as to how simply or extravagantly he might have been living in that household. With an evident employment history through January 2009 (no doubt the basis for determining his obligation on the charging order), the court reasonably believed the defendant had some means to meet his purge conditions if he so desired. Additionally, the court believed he had the present ability to participate in work release, which was the alternate purge condition that if fulfilled would result in his release from incarceration. In fact, but for some alleged condition set by the prison, which condition the defendant did not allege was incapable of achievement, the defendant would have been performing work release at a rate of compensation that would have quickly led to his meeting his purge condition. As referenced above, clearly the attempt to coerce the defendant into complying with the support order was working insofar as the defendant was able to find employment from his jail cell, a feat which he apparently could not accomplish from within the confines of the shelter provided by his father. Obviously, as intended by the court, the incarceration served to motivate the defendant from continuing his contemptible conduct.

For the foregoing reasons, the court believes it appropriately exercised its discretion in finding the defendant to be in contempt and in fashioning orders with achievable purges.